NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 09-CV-44-HRW

VINCENT D. ADAMS                                                          PLAINTIFF

VS:                  **MEMORANDUM OPINION AND ORDER**

JOHN MOTLEY, et al.                                           DEFENDANTS

***** ***** *****

This matter is before the Court on the several Motions of the parties. For the reasons set forth below, the Court will dismiss this cause of action.

## BACKGROUND

On June 2, 2009, Vincent D. Adams, an individual in the custody of the Kentucky Department of Corrections ("KDOC") and incarcerated in the Kentucky State Reformatory, submitted a *pro se* civil rights Complaint, pursuant to 42 U.S.C. § 1983, seeking damages. He complained of numerous KDOC officials' involvement in unauthorized withdrawals from his inmate account when he was previously incarcerated at the Eastern Kentucky Correctional Complex ("EKCC"), which is in the Eastern District of Kentucky.

Plaintiff named the following EKCC personnel as the Defendants: Warden John Motley; Deputy Wardens Rob Howerton and John Holloway; accountants in charge of inmate accounts Tammy Cooper, Nova Roe, and Linda Montgomery; and the following grievance committee members: an "N.S.A." named "Heather Nickell" in the Medical Department, a "C.T.O./Case

Worker" named Mr. Shelby Kash, Justin Brown, Gary Wallace, and Vickie Henly.

After screening the Complaint, the Court issued an Order in which it summarized the Plaintiff's factual allegations as follows:

> Adams claims that the funds in his inmate account in the hands of the KDOC have been "100% frozen," since July or October of 2003.
>
> Plaintiff attaches a court Order which demonstrates that he is an indigent, having been permitted to proceed *in forma pauperis*. . . . Consistent with 28 U.S.C. § 1915(b), the amount taken from his inmate account monthly is limited. The deduction may be taken only in those months in which his income totals more than $10.00, and even then, the installment amount is limited to only twenty percent (20%) of his income.
>
> Plaintiff also alleges that "another rendering of due process was held at the [EKCC] in a disciplinary hearing which allowed for a Fifty percent (50%) deduction," to pay the fine ordered in that disciplinary proceeding. Further, he claims to understand that he must pay to see medical staff and to pay for legal copies and postage. His complaint is that the EKCC inmate accounts department has not acknowledged the 50% limit set in its own regulation. The department employees take not just 50% of his income, but 100%, despite the 50% limit in CPP 15.7.
>
> The majority of Plaintiff's exhibits show that he complained of the freezing of his funds via a grievance, a part of the administrative remedy process, in 2006, again in 2008, and may have done so most recently, in 2009. He claims to have exhausted the KDOC's administrative scheme,[1] and he attaches two documents signed by the KDOC Commissioner, the last level of that process.
>
> In Adams' Grievance Number 08-423, the Commissioner has written that "the institution should only be taking 50% of your funds. However, the policy is somewhat confusing on this matter and it will be revised to reflect the procedure for deducting 50% of funds for any type of debt." Ex. A, dated December 19, 2008. Another exhibit is a one-paragraph memorandum from the grievance coordinator

---

[1] The KDOC's administrative remedy process is set out in CPP Number 14.6, entitled *Inmate Grievance Process,* and it explains the steps which State inmates are required to pursue in order to exhaust the grievance procedures. The four-step process for non-health care types of grievances is found in CPP 14.6 § II(J)(1)-(4). Under this process, an inmate must file a written grievance and seek an Informal Resolution (§ II(J)(1)(a)and (b) ( "**Step 1**"). If not satisfied there, he must make a written request that the Grievance Committee hold a hearing to consider his grievance (§ II(J)(2) ( "**Step 2**"). If not satisfied with the Grievance Committee's disposition, he may appeal to the Warden. *See* § II(J)(3)("**Step 3**"). Finally, if not satisfied with the Warden's decision, an inmate may file an appeal to the KDOC Commissioner. *See* § II(J)(4)("**Step 4**"). Time frames for appeals and responses are established within the regulation.

dated three months later and directed to the entire inmate population. It references "R09-149" and contains the Commissioner's signature below the following:

> I have reviewed your grievance. As I stated in an earlier Commissioner's decision[,] CPP 15.7 is being changed to reflect that only 50% of all incoming funds and state pay will be applied to debts. In addition, the computer program is being changed to come in line with this directive. However, EKCC should only be deducting 50% from inmate accounts to pay debts due to my previous decision. Therefore, the institution will be contacted to ensure my earlier decision is being implemented. This should clear up any confusion. No further response necessary.

Ex. I, dated March 23, 2009. Nonetheless, Plaintiff alleges that as of the date of his signing the verified Complaint in this case, May 28, 2009, he was still losing 100% of his income.

Plaintiff alleges that because he does not have the 50% of his income to which he is entitled, the EKCC Defendants are maliciously violating due process and also inflicting cruel and unusual punishment by depriving him of necessary items normally provided to indigent prisoners. He complains that he cannot buy personal items such as deodorant, a soap to which he is not allergic, lotion for his hands which dry out and bleed from the harsh State-supplied soap to which he is allergic, and over the counter medication to relieve his arthritis; additionally, he cannot obtain writing paper, envelopes, and postage for personal letters.

Record No. 10 at 2-4.

In addition to the claims based on the U.S. Constitution's Amendments, the Court noted that the Petitioner has also asserted violations of Kentucky law, including its Constitution and KDOC Policies and Procedures ("CPP") at CPP 15.7.[2] The Court concluded the screening Order with directions to the KDOC that it could waive service of process for their employees in exchange for a longer time to respond to the Complaint, per a procedural agreement between the KDOC and this Court.

---

[2] The KDOC has promulgated a set of administrative regulations at 501 K.A.R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern prison procedures. CPP 15.7, titled *Inmate Account Restriction*, explains the functioning of accounts, including the possibility of freezing an inmate's account.

In the waiver of service which the KDOC ultimately filed, counsel stated that she was not responding on behalf of Defendants Heather Nickell, Shelby Kash, Justin Brown, Gary Wallace, and Vickie Henly, as they are not employees of the Kentucky Department of Corrections. The Motions made by counsel which the Court addresses today are on behalf of the remaining six (6) Defendants: Motley, Howerton, Holloway, Cooper, Roe, and Montgomery.

## DEFENDANTS INITIAL MOTIONS

The KDOC Defendants have responded to the Complaint with two Motions, one asking the Court to set aside its Order granting the Plaintiff's Motion to Proceed *in forma pauperis* [Record No. 12] and the other seeking dismissal on the ground that Adams has failed to state a claim upon which relief may be granted [Record No. 13].

With regard to this Court's grant of pauper status, the Defendants inform the Court that the Plaintiff has fraudulently misled the Court as to his prior litigation. They point to page 7 of the instant Complaint, where he indicated that he had not filed any previous lawsuits. However, they claim, Adams had actually filed three previous civil actions and two appeals which were dismissed for frivolousness or failure to state a claim.

The Defendants give citations to the Plaintiff's prior cases, originating in the United States District Court for the Western District of Kentucky, and state that each dismissal was for frivolousness or failure to state a claim. Therefore, any additional action from Adams, including this one, is statutorily barred from proceeding in federal court *in forma pauperis* under 28 U.S.C. § 1915(g). Accordingly, the Defendants argue, this Court should set aside the Order granting Adams pauper status and require that he pre-pay the full filing fee before letting the case proceed further.

The Defendants have also submitted a Motion to Dismiss this cause of action for Plaintiff's

4

failure to state a claim upon which the Court may grant relief. They note that in the Complaint, the Plaintiff does not refer to the capacity in which he is suing the named Defendants. To the extent that Adams is seeking relief from them in their official capacities, the claims must be dismissed on the ground that suits for damages against State officials in their official capacities, like claims directly against a State, are barred by the Eleventh Amendment to the United States Constitution.

Further, with regard to claims against them in their individual capacities, the Defendants contend that in his Complaint the Plaintiff did not state a claim that he was suing any of them individually. Rather, the Court *construed* his claims as being in both official and individual capacities. However, it was the Plaintiff's obligation to give the Defendants notice that he was seeking monetary recovery from them individually. Having failed in this obligation, the Plaintiff's individual claims also cannot proceed and his cause of action should be dismissed.

## Plaintiff's Responses

In response to the Defendants' Motions, the *pro se* Plaintiff has filed three Motions of his own.

The first of the Plaintiff's Motions is a Motion to Strike both of the Defendants' Motions. R. 15. As grounds, Plaintiff asserts that the Defendants did not timely respond to the Complaint with their Motion to Dismiss. The Defendants were permitted 60 days to respond, but took 61 days before doing so, from the waiver of service on September 23, 2009, to the filing of their dispositive Motion on November 23, 2009.

As to the Defendant's claim that Adams should not be proceeding in this case as a pauper because he has had more than the three dismissals allotted in 28 U.S.C. § 1915(g), the Plaintiff initially admits to the dismissals of the earlier lawsuits but later questions this number, claiming that

5

he thought there were only two. *See* Record No. 19. Regardless, his counter response is that he cannot pre-pay the fee because of the actions of the same people whom he has named as keeping his inmate account depleted. Since they make/made him a pauper, they should not be allowed to use his indigency against him. Plaintiff cites opinions from the Eighth Circuit and the Supreme Court of the United States, where dissenters have questioned the constitutionality of the "three strikes" bar of Section 1915(g).

Plaintiff's second Motion is for a Default Judgment. R. 16. Here, he again alleges that the Defendants' dispositive Motion in response to the Complaint was filed late, on the 61st day. He also cites to federal and Kentucky law for the proposition that this Court may grant him Judgment in such a situation upon his Motion.

Third and finally, the Plaintiff has submitted a Motion to Address the Court. R. 17. This is an unauthorized pleading under the Federal Rules of Civil Procedure. In it, Adams "inquire[s] as to the standing of this present case," and he asks the Court to consider a few more arguments. One is his inequity argument, *i.e.,* that it is not fair for the Defendants to keep him a pauper and then, when he files a lawsuit about it, permitting these same people to avoid making a defense by persuading the Court to deny the Plaintiff pauper status.

## DISCUSSION

Beginning chronologically, the Court takes up the first of the parties' Motions, the Defendants' Motion to set aside the Order permitting the Plaintiff to proceed *in forma pauperis*.

This Motion is grounded in the pauper statute, Title 28, United States Code, § 1915, which was amended in 1996 by the Prison Litigation Reform Act ("PLRA"). In pertinent part, it now provides as follows for indigent prisoner-plaintiffs:

6

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g). Therefore, a prisoner meeting the statutory condition of having three prior actions dismissed for any of the reasons set out above may not be granted permission to proceed without prepayment of fees under § 1915, but must pay the fees in full at the time of filing the civil action or appeal. The only exception to this limitation is if the prisoner is under imminent danger of serious physical injury.

The Court is more than a little troubled that the people who purportedly took Plaintiff's funds would have the benefit of their wrong-doing, by not having to defend themselves in federal court. Whether the Plaintiff has, indeed, had three civil actions or appeals dismissed for one of the reasons stated in Section 1915(g) is now before the Court as an issue of fact to be resolved. However, the Court will not spend further time to reach the issue herein, for the reasons stated below. Rather, this Motion will be denied, without prejudice to future litigation of the issue.

The Plaintiff's Motions to Strike the Defendants' pleadings and for the Court to Grant a Default Judgment to him are grounded in his belief that their Responses to the Complaint were untimely. Even counting the amount of time between the filing of the Complaint on September 23, 2009, and the Defendants' Motion to Dismiss on November 23, 2009, as 61 days, the Court finds that the Defendants' responsive pleadings were not tardy.

Federal Rule of Civil Procedure 6, **Computing and Extending Time; Time for Motion Papers**, provides for computing time as follows:

> (a) Computing Time. The following rules apply in computing any time period

specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.

> (1) Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time:
> (A) exclude the day of the event that triggers the period;
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
> (C) include the last day of the period, but *if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday*.
> (2) . . .

Fed.R.Civ.P. 6(a)(1)(C) (emphasis added). November 23, 2009, when the Defendants' responses were filed, was a Monday. The 60-day due date for the Defendants' filing a response occurred over the preceding week-end. Therefore, the 60-day time period "continue[d] to run until the end of the next day that is not a Saturday, [or] Sunday. . . ." Accordingly, by operation of the Federal Rule, the filing of the Defendants' Motions on the following Monday, November 23rd, was not untimely. There is no basis to Strike the Defendants' responsive Motions or grant a Default Judgment to the Plaintiff. Thus, two of Plaintiff's Motions will be denied.

As to the Defendants' Motion for dismissal of this action, pursuant to Federal Rule 12(b)(6), for Plaintiff's failure to state a cognizable claim, They argue that the official capacity claims against them are barred by the Eleventh Amendment of the U.S. Constitution and that the Plaintiff has failed to state a claim against them in their individual capacities. The Court agrees with the Defendants on these capacity issues.

It is well established that claims against the a Section 1983 Defendant in his official capacity are barred by the Eleventh Amendment. That Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or subjects of any foreign State." U.S. Const. art. XI. Thus, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Moreover, "[i]t is . . . well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment[,] "if the suit is somehow deemed to be against the State. *Id.* A "plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, the Eleventh Amendment bars claims against state officials in their official capacities for damages. *See Hafer v. Melo*, 112 S. Ct. 358, 365 (1991); *Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir. 1992). Accordingly, this Plaintiff's official capacity claims against the State Defendants are barred from federal courts under the Eleventh Amendment and they will be dismissed.

The Eleventh Amendment does not bar damage claims against State officials in their *individual* capacities. The question in this case is whether the Plaintiff has stated cognizable damage claims against them individually. The Defendants are correct to cite *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) for the test by which the Court determines if the Plaintiff has given sufficient notice of his intent to hold them personally liable.

The test established by the Sixth Circuit is stated in *Moore*, as follows: "When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether *Wells*' . . . concern about notice has been satisfied." 272 F.3d at 772 (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) (holding that under *Will v. Michigan*

9

*Dept. of State Police*, 491 U.S. 58, 71 (1989) plaintiffs seeking damages under § 1983 must set forth clearly in their pleading that they were suing state officials as individuals, rather than as officials)).

Later, the Sixth Circuit expounded further on the test in *Moore*:

> Under this test, we consider the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. *Id*. at 772 n. 1. We also consider whether subsequent pleadings put the defendant on notice of the capacity in which he or she is being sued. *Id*.

*Shepherd v. Wellman*, 313 F.3d 963, 968 (6th Cir. 2002) (affirming dismissal of a defendant in a Section 1983 action on the ground that the plaintiff had failed to give notice that he was seeking damages from him individually). The instant Defendants distinguish *Moore*, contend that the pleadings herein are more like those in *Shepherd*, and urge this Court to follow the result of the District Court in *Shepard*, *i.e.*, dismiss the individual capacity claims.

With *Moore* on one side and *Shepherd* on the other, this Court has scoured the Plaintiff's pleadings for notice that Adams is suing the named Defendants with the intent to dip into their pockets individually to recover the damages. As the Defendants admit, Plaintiff has sought punitive damages but it is also true that a demand for damages, standing alone, is not enough to satisfy the notice requirement to individual defendants. *Shepherd*, 313 F.3d at 968. Unlike Plaintiff Moore, this Plaintiff does not state that he sought the damages from "each of the defendants."

In the heading of the instant Complaint form which Adams submitted, he has listed the names of the Defendants, but just below and on the next page, he has also given the title or job of each one. Therefore, these references do not settle the matter one way or the other. Exhibits to his pleadings show that even when writing the attached letters to various KDOC officials, the Plaintiff has used their office/position/job beside their names to appeal to them to correct the problem.

The only reference which could arguably be interpreted as indicating an intent on the part of the Plaintiff to recover from the Defendants individually is the allegation in his Motion to Strike that "the Defendant's [sic] of Eastern Kentucky Correctional Complex, which is part of the K.D.O.C., either on their own, or by being instructed by a higher authority of the E.K.C.C. went against the administrative regulations by the D.O.C. . . . ." Record No. 15. However, the Court finds that this language is ambiguous at best. Except for this one quote, the Plaintiff's pleadings – including his three pleadings after the filing of Defendants' Motion which raised the capacity issue – cannot be said to provide adequate notice of potential personal liability.

Like another District Court in this Circuit, this Court has concluded that "the allegations here are closer to Shepherd in that they fail to focus on individuality." *Featherstone v. Graham*, No. 08-CV-690, 2009 WL 503079 at *3 (S.D. Ohio December 11, 2009). "Based on the foregoing, this Court concludes that insufficient indicia exists to conclude that Defendant was on notice of an individual capacity claim so as to subject Defendant to personal liability." *Id.* at *5.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiff's Motions to Strike and Motion for Default Judgment [Record Nos. 15-16] are **DENIED**;

(2) Defendants' Motion to Set Aside Order [Record No. 12], granting Plaintiff Adams pauper status, is **DENIED** without prejudice;

(3) Plaintiff's Motion to Address the Court is **CONSTRUED** as a Motion for permission to Supplement his arguments [Record No. 19] and it is **GRANTED**, as the Court has considered its contents;

(4)     Defendants' Motion to Dismiss [Record No. 13] is **GRANTED;** and

(5)     This action will be **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This April 12, 2010.

Signed By:
Henry R Wilhoit Jr.
United States District Judge